**2015 UT App 63**

## THE UTAH COURT OF APPEALS

NEIL ANDERSEN, ET AL.,[1]
Plaintiffs and Appellants,
*v.*
DEPARTMENT OF CORRECTIONS,
Defendant and Appellee.

Memorandum Decision
No. 20131135-CA
Filed March 19, 2015

Third District Court, Salt Lake Department
The Honorable L.A. Dever
No. 120904405

Lauren I. Scholnick and Matt W. Harrison,
Attorneys for Appellants

Sean D. Reyes and Peggy E. Stone,
Attorneys for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in which JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

DAVIS, Judge:

¶1     Plaintiffs appeal the district court's ruling granting summary judgment in favor of the Utah Department of Corrections (UDOC) on Plaintiffs' breach of contract claims. We affirm.

¶2     Plaintiffs are current and former transportation-unit correctional officers. In 1996, UDOC entered into an agreement

---

1. The parties on appeal are not limited to those listed but also include other parties whose names appear on the notice of appeal or who have otherwise entered appearances in this court.

with correctional officers who worked or anticipated working in the transportation unit. The agreement established a pay incentive amounting to a three-step pay-grade increase for transportation officers. This agreement was modified in 2000 following a dispute between UDOC and the transportation officers. The original agreement provided that an officer who left the transportation unit would lose the pay-grade steps the officer had gained by joining, but the modified agreement provided that officers who served in the transportation unit for at least three years would "not lose any steps" and would "maintain[] minimally their current rate of pay." Officers who joined the transportation unit after the agreement was modified signed a memorandum of understanding reflecting the terms of the modified agreement.[2]

¶3 In 2007, UDOC's new executive director discontinued the practice of providing pay incentives to officers joining the transportation unit, and officers joining the transportation unit after the incentives were discontinued did not sign the modified agreement.[3] In 2008, UDOC shifted all employees into a "straight-line career ladder pay scale." In response, Plaintiffs filed a complaint against UDOC, claiming that the modified agreement provides for them to maintain a three-step pay-grade differential above other UDOC employees in perpetuity after three years in the transportation unit and that UDOC breached the modified

---

2. Although the memorandum of understanding signed by officers who joined the transportation unit after 2000 contained slightly different language than the modified agreement, the differences are not relevant to our analysis. Therefore, for simplicity, we refer to all of these agreements collectively as "the modified agreement."

3. Some of the plaintiffs in this case are officers who joined the transportation unit around the same time the incentive program was discontinued. The parties dispute whether these individuals are parties to the modified agreement, but in light of its grant of summary judgment to UDOC, the district court did not resolve that dispute. The issue is therefore not before us on appeal.

agreement by shifting transportation officers who had signed the modified agreement into the new pay scheme.[4]

¶4    UDOC moved for summary judgment on Plaintiffs' claims, arguing that the modified agreement unambiguously establishes only that transportation officers who have reached the three-year mark cannot lose their three-step raise, not that they are entitled to maintain a three-step differential in perpetuity. Plaintiffs responded that the language in the modified agreement pertaining to raises and promotions makes the contract ambiguous as to whether the three-step differential must be permanently maintained. The district court examined the contract and determined that "[t]here is no language in the contract that supports the interpretation offered by Plaintiffs." Accordingly, the district court granted UDOC's motion for summary judgment.

¶5    On appeal, Plaintiffs assert that the modified agreement is ambiguous and that the district court therefore erred in granting summary judgment to UDOC. "[A] motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists in the contract and there is a factual issue as to what the parties intended." *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 22, 54 P.3d 1139 (alteration in original) (citation and internal quotation marks omitted). We "review[] a summary judgment for correctness, giving no deference to the trial court's decision." *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56.

¶6    A contract "is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (citation and internal quotation marks omitted). Plaintiffs argue that the modified agreement is ambiguous because its provisions regarding salary, raises, and promotions can reasonably be interpreted as providing for a

---

4. Plaintiffs' salaries were not reduced under the new pay scheme, but they assert that the new pay scheme will have the effect of diluting their three-step pay-grade differential over time.

perpetual three-step pay-grade differential between transportation officers and non-transportation officers.

¶7    Plaintiffs point to three particular provisions in the modified agreement that they contend make the agreement ambiguous. First, they examine the provision indicating that "salary increases to Transportation Unit members will minimally be benchmarked to Correctional Officers in the Division of Institutional Operations." Plaintiffs interpret this provision as requiring "that when [non-transportation] officers receive a pay raise, former or current [transportation] Officers also receive the equivalent pay raise. This interpretation . . . would effectuate a constant pay differential whereby [current and former transportation] Officers would remain above [non-transportation] officers." They next look to the provision indicating that an officer leaving the transportation unit "will not lose any steps, but will be able to transfer into a position that is the same as or closest to their current salary range that does not constitute a promotion, and maintains minimally their current rate of pay." Plaintiffs interpret this provision as meaning "that the officer who received a three step increase when joining the [transportation] unit and then received all increases given [non-transportation] officers for at least the three years in [the transportation unit] . . . will come back into the ranks with a three step advantage on any [non-transportation] officer." Finally, Plaintiffs point to the provision indicating that a transportation officer who "receives a promotion . . . will receive the same salary increase consideration that other officers receive when they are promoted." They interpret this provision as requiring that even though a transportation officer may already be earning the typical salary of a promoted position, that officer should "receive the same percentage increase or same dollar increase that [a] promoted [non-transportation] officer [would] receive[]," which would, again, have the effect of keeping that officer three steps above non-transportation officers who followed a comparable career track.

¶8    We do not disagree with Plaintiffs that some language in the modified agreement may be ambiguous as to how transportation officers' pay raises and promotions are to be handled as compared

to those of non-transportation officers. However, the action taken by UDOC that triggered the Plaintiffs' claims was the implementation of a new pay scheme applicable to all UDOC employees. Plaintiffs do not contend that the new pay scheme prevents transportation officers from receiving salary increases that are equivalent to those received by non-transportation officers, reduces transportation officers' salaries when they leave the transportation unit, or precludes promoted transportation officers from receiving raises on par with those of other promoted officers.[5] Thus, we fail to see how the ambiguities pointed out by Plaintiffs could support a determination that UDOC breached the modified agreement by implementing the new pay scheme. *See* Utah R. Civ. P. 56(c) (providing that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and

---

5. There is very little in the record explaining the new pay scheme. Neither Plaintiffs' complaint nor their briefs on appeal explain how the new pay scheme is expected to affect Plaintiffs' ability to maintain a three-step pay-grade differential. At the hearing on the motion for summary judgment, Plaintiffs' counsel suggested that the new pay scheme puts a cap on an officer's ability to obtain raises once the officer reaches a certain pay level. According to Plaintiffs' counsel, if this scheme is applied to transportation officers, then the three-step differential of a transportation officer who reaches the highest pay level will eventually be diluted as other non-transportation officers receive salary increases. At oral argument on appeal, UDOC explained that the new pay scheme establishes minimum salaries based on years of service that would result in salary increases for officers who were earning below the minimum when they reached certain years-of-service milestones. Since transportation officers are more likely to be above the minimum when they reach these milestones, their three-step differential may be diluted as other officers making below the minimum receive years-of-service increases. However, the new pay scheme does not reduce Plaintiffs' salaries, and Plaintiffs have pointed to nothing to suggest that the new pay scheme would preclude them from obtaining raises and promotions based on the same standards as all other correctional officers.

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").

¶9    Plaintiffs also rely on extrinsic evidence to support their argument that the modified agreement was ambiguous.[6] Although district courts are required to "review relevant and credible extrinsic evidence offered to demonstrate that there is in fact an ambiguity," *Daines*, 2008 UT 51, ¶ 31, "a finding of ambiguity after a review of relevant, extrinsic evidence is appropriate only when reasonably supported by the language of the contract," *Watkins v. Henry Day Ford*, 2013 UT 49, ¶ 28 n.2, 304 P.3d 841 (citation and internal quotation marks omitted). *See id.* ("The introduction of any relevant evidence does not . . . allow a litigant to create ambiguity out of whole cloth or to advocate for an interpretation that is in no way supported by the language of the underlying contract." (emphasis, citation, and internal quotation marks omitted)); *Daines*, 2008 UT 51, ¶ 31 ("[T]here can be no ambiguity where evidence is offered in an attempt to obscure otherwise plain contractual terms."). Plaintiffs' interpretation of the modified agreement is not "plausible and reasonable in light of the language used." *See Daines*, 2008 UT 51, ¶ 31 (citation and internal quotation marks omitted). The language of the modified agreement provides for transportation officers to be treated the same as other officers for purposes of promotions and raises. A promise to maintain the transportation officers' three-step pay-grade differential in

---

6. Specifically, they point to the affidavit of UDOC's former executive director, in which he averred that the modified agreement intended for transportation officers to "always be paid at a higher rate than officers who had never worked in [the transportation unit]"; the declarations of transportation officers claiming that UDOC informed them when they signed the modified agreement that their pay would always be three steps higher than officers who had not worked in the transportation unit; and the history of the dispute between the transportation officers and UDOC, which led to the adoption of the modified agreement.

perpetuity cannot reasonably be construed from this language, except to the extent the pay-grade differential naturally persists as a result of transportation officers receiving raises and promotions at the same rate as other officers.[7] It cannot reasonably be read to exempt transportation officers from changes to UDOC's pay scheme that apply to all UDOC employees. Thus, Plaintiffs' interpretation is not reasonably supported by the language of the contract. *See Watkins*, 2013 UT 49, ¶ 28 n.2.

¶10   Because the language of the modified agreement is not reasonably subject to the interpretation advocated by Plaintiffs, we agree with the district court that it is unambiguous as to whether Plaintiffs are entitled to retain their three-step pay-grade differential in perpetuity. Accordingly, we affirm the district court's grant of summary judgment in favor of UDOC.

───────────

─────────────────

7. As UDOC observed at the hearing on its motion for summary judgment, "[i]n a perfect world . . . , if [a transportation officer] walked lockstep with another officer for [his or her] entire career," the transportation officer could conceivably maintain a three-step pay-grade differential under the terms of the modified agreement.